IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ACKERMAN MCQUEEN, INC., § <br> MERCURY GROUP, INC., HENRY § <br> MARTIN, WILLIAM WINKLER, § <br> MELANIE MONTGOMERY, § <br> AND JESSE GREENBERG, § <br>     *Movants*, § <br> § <br> § <br> **v.** § <br> § <br> NATIONAL RIFLE ASSOCIATION OF § <br> AMERICA and WAYNE LAPIERRE, § <br>     *Respondents*. § | Miscellaneous Case No. MC-20-00009 |

## MOVANTS' MOTION TO QUASH PLAINTIFF'S THIRD-PARTY SUBPOENA

Movants Ackerman McQueen, Inc. ("*AMc*"), Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "*Movants*") file this *Motion to Quash Plaintiff's Third-Party Subpoena* served upon Tammy Payne ("*Payne*"), attached as **Exhibit 1** hereto, and in support thereof respectfully show as follows:

### I.   SUMMARY

In keeping with the NRA's abusive discovery tactics, the NRA has forced Movants to come back to this Court for yet another third-party subpoena[1] (in addition to requiring

---

[1] *See Ackerman McQueen Inc. et al. v. National Rifle Association of America et al.*, Misc. Case No. MC-20-1-HE, in the United Stated District Court for the Western District of Oklahoma, at ECF 1 (moving to quash eight third-party subpoenas) & ECF 8 (moving to quash renewed third-party subpoena); *National Rifle Association of America et al. v. Ackerman McQueen, Inc. et al.*, Misc. Case No. MC-20-8-PRW, in the United Stated District Court for the Western District of Oklahoma, at ECF 4 (moving to quash third-party subpoena to HBC CPAs & Advisors').

other parties to file similar motions in this same case[2]), this time seeking "all" documents that "refer or relate to" every bit of information concerning Payne's employment with AMc, all work for NRATV, and even including AMc's own strategic business practices *with all of AMc's clients*.  As Movants previously brought before this Court, the NRA's third-party subpoenas are an attempt to circumvent certain protective orders (first, the protective order from the Virginia Action[3] and, now, the protective order entered in the Texas Action[4]) and to harass AMc and its clients for no supportable reason relevant to the present dispute.  Movants again respectfully request this Court prohibit the NRA from pursuing such abusive tactics in this jurisdiction.

## II.   BACKGROUND

### A.   Litigation History

1.   As this Court may well be aware after the number of motions to quash filed before it, the NRA sued AMc four times, three times in Virginia state court, and once in Texas federal court.  The NRA moved to amend its claims in Virginia on the eve of trial to add mirror claims as those it had lodged in Texas several months prior; in short, the Virginia Action (consolidated into one) and the Texas Action are now mostly identical, except that the Texas Action includes additional defendants.

---

[2] *See National Rifle Association of America, et al. v. Ackerman McQueen, Inc. et al.*, MC-20-5, in the United States District Court for the Western District of Oklahoma, ECF 1 (non-parties Chickasaw Nation, Bill Lance, and David Daniel Boren moving to quash another subpoena to each of them, which had previously been quashed); *National Rifle Association of America et al. v. Ackerman McQueen, Inc. et al.*, Misc. Case No. MC-20-8-PRW, in the United Stated District Court for the Western District of Oklahoma, at ECF 1 (HBC CPAs & Advisors moving to quash subpoena).
[3] *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Case Nos. CL19002067, CL19001757, and CL19002886, pending before the Circuit Court for the City of Alexandria, Virginia (the "***Virginia Action***").
[4] *NRA v. Ackerman McQueen, Inc., et al*, Case No. 3:19-cv-02074-G, in the United States District Court for the Northern District of Texas, Dallas Division (the "***Texas Action***").  *See* ECF No. 149, attached hereto as **Ex. 2**.

2.      Notwithstanding the duplicative lawsuits in multiple venues, what makes this litigation particularly unusual, is the relationship between NRA's lead counsel, William A. Brewer III ("**Brewer**"), and AMc.  Brewer is the son-in-law of AMc's longtime CEO, Angus McQueen (now deceased), and the brother-in-law of AMc's current CEO, Revan McQueen.  The relationship between Brewer and Angus McQueen was widely known to be characterized by an amount of tension and hostility between the two men, suggesting that Brewer's personal hostility toward his in-laws is the true driver of this litigation.

### B.      Brewer Steals AMc's Business

3.      As an additional twist on traditional litigation, Brewer's law firm (the "**Brewer Firm**") is also a business competitor with AMc.  In many respects, the Brewer Firm is a public relations firm masquerading as a law firm to try cases in "the court of public opinion" as opposed to the courtroom.[5]  The Brewer Firm employs a team of people who provide public relations, crisis management, and media relations services for its clients,[6] the very same services AMc provided to the NRA for nearly four decades.

4.      Within weeks of the NRA engagement in 2018, Brewer and his PR team began stealing AMc's business by drafting press releases for the NRA and making decisions relating to content on the NRA website (which AMc controlled), both tasks for which AMc was previously solely responsible.  Now, Brewer has completed his quest by

---

[5] *See* https://www.brewerattorneys.com/the-art-of-advocacy (noting that the Brewer Firm "position[s] [its] clients to prevail both within and outside the courtroom.").

[6] *See* https://www.brewerattorneys.com.  Before even discussing the Brewer Firm's legal services, the landing page for the Brewer Firm's website states, "Because we operate at the intersection of law, business, and communications, we utilize multiple channels to advocate for – and advance – our clients' interests. The firm employs expert professionals in the fields of finance, economics, the sciences, investigations, and crisis management."

causing the NRA to sever its decades-long relationship with AMc, which interference is the subject of AMc's counterclaims. His firm even attempted to hire AMc employees to do the work AMc used to perform under its contract with the NRA.

5. Indeed, after hearing argument from counsel regarding Brewer's public relations ("*PR*") competition against AMc, the Virginia court walled-off Brewer and his PR unit from all information designated highly-confidential. But Brewer and his firm have incessantly attempted to circumvent the Virginia court's restraint, including by filing the Texas Action, by refusing to submit to the same protective in Texas, and now by serving the subpoena (which would grant Brewer, in part, the very information he cannot obtain from AMc—namely, information about AMc's business practices, including with other clients).

6. More importantly to this present dispute, Northern District of Texas Magistrate Judge Toliver found that the NRA "all but concedes this point [that it is attempting to circumvent the Virginia protective order] in its proposed protective order" by proposing to demote Highly Confidential information (from which Brewer is walled-off) to merely Confidential (from which Brewer is *not* walled-off).[7] Magistrate Judge Toliver expressly "agree[d] with Judge Dawkins' conclusion [in the Virginia Action] that Brewer and its PR unit should be walled off from information designated as Highly Confidential Information."[8] She noted further that, with AMc's proprietary client and

---

[7] *See* Texas Action ECF No. 148 at 3.
[8] *Id.*

business information, "Brewer could use that competitive information to severely prejudice AMc."[9]

## C.     Tammy Payne's Relationship with AMc

7. Payne is a former employee of AMc. The NRA has requested from Payne "all documents" "referring or relating to," for example, her employment by AMc; her job responsibilities for NRATV; AMc's practices regarding budgeting, interactions with client executives, hiring or managing employees or vendors for NRA work; any complaint or allegation about or against AMc; her separation from AMc; and even "all documents that refer or relate to NRATV," amongst several other requests.[10]

8. As a preliminary matter, Payne's personal dispute with AMc has no relation to this lawsuit.[11] Moreover, as Payne is a former employee, any documents belonging to *AMc* that may still be in Payne's possession should be (and actually have been) requested from AMc. *See* **Exhibit 3**.[12] Indeed, AMc has already agreed to produce, and has produced, tens of thousands of documents that the NRA is seeking through the subpoena, including approximately eight thousand documents related to NRATV and over two thousand documents relating to Payne. *See* **Exhibit 4**.[13]

---

[9] *Id.*
[10] The NRA previously attempted to subpoena Payne as part of the Virginia Action, but enforcement of that subpoena was stayed following the Virginia Court's abatement of that action pending the outcome of the Texas litigation. *See Ackerman McQueen, Inc. and Mercury Group, Inc. v. NRA*, Case No. CV-2019-2813, in the District Court for Oklahoma, State of Oklahoma.
[11] *See Payne v. McQueen*, CJ-2020-3199 (Ok. Co. Dist. Court Jul. 10, 2020).
[12] Defendants' Objections and Responses to Plaintiff's First Set of Requests for Production, Nos. 31-28, 44, 46, 47, 51, 73, 74.
[13] Declaration of Brian E. Mason.

9. Regardless, it is still entirely unclear what specific information the NRA hopes to learn through this subpoena. Most importantly, the subpoena seeks documents dating back five years from today but covering, in actuality, the totality of the relationship between Payne and AMc during that timeframe. In sum, the subpoena is nothing but a fishing expedition to retroactively justify a previous bad-faith allegation with no basis in law or fact.

### III.   ARGUMENTS & AUTHORITIES

10. To quash a third-party subpoena, one must have a "personal right or privilege in the subject matter of the subpoena or a sufficient interest in it."[14]

11. Under Federal Rule of Civil Procedure 45, a Court must quash or modify a subpoena that subjects a person to undue burden.[15] The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information.[16]

12. Moreover, subpoenas to a non-party do not grant the requesting party any broader right to information than allowed by the Federal Rules of Civil Procedure for discovery between the parties. Rather, "considerations of both relevance and proportionality govern the subpoenas."[17] Accordingly, a subpoena must be relevant to a party's claim or defense and be proportional to the needs of the case.[18] Thus, under

---

[14] *Bramell v. Aspen Expl., Inc.*, No. 4:05-CV-384, 2008 U.S. Dist. LEXIS 72674, at *4 (E.D. Tex. 2008).
[15] FED. R. CIV. P. 45(d)(3)(A)(iv).
[16] FED. R. CIV. P. 45(d)(3)(B).
[17] *Ward v. Liberty Ins. Corp.*, No. CIV-15-1390-D, 2018 U.S. Dist. LEXIS 26710, at *3 (W.D. Okla. Feb. 20, 2018) (quashing the subpoena as unduly burdensome when it required the subpoenaed party to "turn over apparently every document related to its policies and procedures … regardless of the documents' relevance to Plaintiff's claims in this suit").
[18] *See* FED. R. CIV. P. 26(1).

Oklahoma federal law, a lawyer has a "duty to take reasonable steps to avoid imposing undue burden or expense upon the party subject to the subpoena."[19]

13.     Rule 45 requires the Court to quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.[20] The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information.[21]

14.     Further, "good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that rule," *i.e.*, by imposing an undue burden on the third party.[22]

**A.     The subpoena seeks information that is irrelevant to the NRA's claims and defenses.**

15.     The relevance of a subpoena seeking discovery is measured by the standard articulated in Rule 26(b)(1), which limits the scope of discovery to nonprivileged matters "relevant to" the claims or defenses in the case *and* "proportional to the needs of the case."[23] The subpoena must, therefore, be limited to documents that are relevant to any party's claim or defense and cannot be used to "develop new claims or defenses."[24]

16.     The following categories of documents requested in the subpoena have no relevance to the NRA's claims or defenses in this lawsuit:

---

[19] *Huntair, Inc. v. ClimateCraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008).
[20] FED. R. CIV. P. 45(d)(3)(A).
[21] FED. R. CIV. P. 45(d)(3)(B).
[22] *Huntair,* 254 F.R.D. at 679.
[23] FED. R. CIV. P. 26(b)(1).
[24] *Kizer v. Starr Indem. & Liab. Co.*, 2019 U.S. Dist. LEXIS 76320, at *6 (W.D. Okla. May 6, 2019).

a. Documents "referring or relating to" Payne's recruitment, employment, or the terms of her employment with AMc;

b. Documents "referring or relating to" AMc's practices regarding hiring or managing employees or vendors for work on other AMc client accounts;

c. Documents "referring or relating to" AMc's practices regarding interactions with client executives;

d. Documents "referring or relating to" Payne's separation from AMC, "including but not limited to any severance, settlement or non-disclosure agreement" (which, by their very terms, would contemplate no disclosure if they existed);

e. Documents "referring or relating to" "any" claim, complaint or allegation about or against AMc, its employees, executives, or clients; and

f. Documents "in connection with" any action or proceeding involving a claim Payne has against AMc.[25]

17. Payne's name is not mentioned a single time in Plaintiff's complaint, and her employment has no relevance to this dispute.[26] Likewise, the documents sought have absolutely no bearing on the claims and defenses asserted in this matter. This subpoena is nothing more than a fishing expedition in search of fodder so that the NRA and its counsel can continue to harass and slander AMc in the "court of public opinion" as they have done since before April 2019.

18. AMc's practices concerning its other clients also have no relevance to this dispute, and is merely AMc's confidential, business information the NRA's counsel has been seeking to support his competitive aims. In light of the topical overbreadth (*i.e.*, all documents relating at all to the Payne-AMc relationship and AMc's own business

---

[25] **Ex. 1**, Nos. 1, 3(c) & (d), 5-7.
[26] *See* Pl.'s First Amended Complaint, ECF No. 18, *NRA v. Ackerman McQueen*, No. 3:19-cv-02074-G (N.D. Tex. Oct. 25 2019).

operations), which amounts to volumes spanning several years, the subpoena can only be intended to seek documents that might develop new claims or defenses. In any event, AMc and the non-party clients themselves are the proper parties from whom to seek this type of discovery, which the NRA has already done.

**B.     The subpoena seeks information that is confidential to AMc's business.**

19.     Through the issuance of the subpoena, the NRA and its counsel are seeking unrestricted access to years of information about AMc's confidential and competitive information. For example, the subpoena request "all documents" at all "referring or relating to" AMc's confidential business "practices" concerning "hiring or managing employees or vendors for work on . . . other AMc client accounts; or interactions with client executives." How AMc strategically staffs its other client accounts or interacts with other clients has no relevance to this lawsuit and is highly confidential information protected in the Texas Action from disclosure to Brewer and his PR unit. It is the very business information a competitor of AMc would want to know to effectively compete with AMc using its own business practices. The NRA has no purpose in requesting that information other than for the Brewer Firm's own strategic or business motives.

20.     Moreover, as stated above, the NRA has already attempted to obtain this information in the Texas action, including from AMc's other clients that have nothing to do with this litigation.

21.     Magistrate Judge Toliver likewise acknowledged the competitive concerns at issue and agreed that Brewer could use AMc's competitive information to severely prejudice AMc's competitive interests. As a former AMc employee, Payne does not share

the competitive concerns that AMc would have with respect to any confidential business information in Payne's possession, and, not being bound herself by the current protective order, should not be permitted to produce any such documents to the NRA as a result.

22.   A number of the other requests seek *AMc's* documents from Payne when the proper request should be directed to AMc who owns the information.  For example:

- a. All documents that refer or relate to your job responsibilities, including but not limited to your responsibilities in connection with the NRA, NRATV or any NRATV program;

- b. All documents that refer or relate to AMc practices regarding:

    - i. Pitching projects for the NRA account;
    - ii. Budgeting or estimating costs for NRA projects including NRATV or any NRATV program;
    - iii. Hiring or managing employees or vendors for work on the NRA account and/or other AMc client accounts; or
    - iv. Interactions with client executives.

- c. All documents that refer or relate to NRATV, including without limitation those documents that refer or relate to:

    - i. NRATV programming, program content, program objective and creative vision, or communications with the NRA concerning any such topic;
    - ii. Viewership statistics or other performance metrics;
    - iii. Funding sources including advertisers, sponsors, and related pitches or communications;
    - iv. Budgets, costs, expenses, forecasts and revenues; or
    - v. Recruitment of human capital and NRATV-related work assignments.

- d. All documents and communications sent or received during your employment with AMc that discuss analytics, unique visitors, unique

viewership, or live viewership data for NRATV, or any NRATV program.[27]

23. *First*, the Northern District of Texas has already acknowledged the Brewer Firm's status as a competitor of AMc due to the overlap of services provided by both AMc and the Brewer Firm.[28] As a result, the Court issued a two-tiered protective order walling-off both Brewer and his public-relations unit from AMc's highly confidential business information, which was the same structure used in the Virginia Action. Because the Brewer Firm sought to reduce the Texas Action protective order to a one-tiered structure (thereby granting Brewer and the PR unit access to this sensitive information), AMc identified this as a clear attempt to circumvent the protective order in Virginia.[29]

24. *Second*, Payne is a former employee of AMc and therefore should no longer be in legal possession, custody, or control of any responsive documents as required by Rule 45. AMc is the legal owner of all of the trade secret and sensitive business information sought in the subpoena, and Payne may not properly produce any documents that might still be in her possession.

25. *Third*, AMc has already produced responsive documents relating to these requests, and has already agreed to produce additional responsive documents relating to these requests, particularly concerning NRATV. Therefore, if this Court grants the Motion, the NRA will still be receiving all of the responsive documents that are relevant to the parties' claims and defenses.

---

[27] **Ex. 1**, Nos. 2-4, 8.
[28] *See* Texas Action ECF No. 148 at 4.
[29] *See id.*

26.     *Fourth*, Plaintiff violated the rules of service by failing to inform AMc that the subpoena had been served on Payne.  Although a copy of the subpoena was submitted prior to service, AMc was not notified that the actual subpoena had been served on August 24, 2020, until nearly three weeks later, on September 14, 2020, when AMc's counsel emailed the Brewer Firm to check the status of service.  *See* **Exhibit 5**.

27.     From the nature of the instant subpoena, it is clear that the NRA is simply seeking yet another way to circumvent the various protective orders in place and gain access to AMc's confidential business information through alternate means.  Neither the NRA nor the Brewer Firm are entitled to AMc's sensitive business information or information related to AMc's other clients because it has no relevance to the issues in this underlying lawsuit and because it requires disclosure of trade secret or and confidential commercial information.[30]  Therefore, the subpoena should be quashed.

### C.    The subpoena is overbroad and unduly burdensome.

28.     The subpoena is facially overbroad, which alone supports a finding that it is unduly burdensome.[31]  Each request in the subpoena seeks "all documents" that "refer or relate to" certain information.  The "all documents" request is facially overbroad on its own when demanding all documents concerning one subject.  Coupled with the phrase "refer or relate to," that overbroad request is now grossly so because it attaches volumes of documents that may only tangentially relate to anything relevant to this lawsuit.

---

[30] FED. R. CIV. P. 45(d)(3)(B).
[31] *See Wiwa v. Royal Dutch Shell Petroleum, Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

29. For instance, "all documents that refer or relate to NRATV" includes any document Payne might have that in any way touches upon, mentions, or *relates to* NRATV, including drafts of documents *or* communication, any data rendered from the documents or communications, and even just internal commentary about the documents or communications. Although it is currently unknown how many such documents Payne may have in her possession, the request itself implicates an enormous number of documents. NRATV had operations in multiple states, and at any given time, dozens of AMc employees might be working on NRATV-related projects. Not only is this request over broad given the sheer size of NRATV operations, but it is also duplicative. As stated above, AMc has produced nearly 8,000 documents "related to" NRATV (and continues to search for more), which have been produced through the proper confidentiality filter of the protective order. Any documents in Payne's possession would only duplicate the organized efforts already in place to produce these documents.

30. More egregiously, the request for "all documents and communications sent or received during your employment with AMc that discuss analytics, unique visitors, unique viewership, or live viewership data for NRATV, or any NRATV program" is a catch-all request. Notably, the request does not seek documents and communications to or from Payne "during [her] employment with AMc." Rather, it includes *any document or communication ever sent*—to or from *anyone*—"during [Payne's] employment with AMc" that discuss various viewership analytics "or any NRATV program." In essence, the NRA need not have submitted any other request because this one demand is broad enough to cover all of the ones concerning NRATV. In addition to volumes of what would be

responsive documents being irrelevant to the actual claims and defenses in the Texas Action, the subpoena is grossly overbroad and should be quashed.

31.    "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation."  As stated above, much of the information sought through this subpoena is both irrelevant and confidential.  Likewise, seeking such volumes of information is simply not proportional to the needs of the case and will impose unnecessary and unfair financial burdens upon AMc who will have to review the documents for responsiveness and confidentiality designations.  The subpoena is, therefore, impermissible and necessarily unduly burdensome.

32.    As set forth by *Wiwa*, the subpoena (1) seeks information not relevant to the dispute in the lawsuit, which (2) exposes the lack of the NRA's need for such documents; (3) the subpoena is facially and practically overbroad, exacerbated by (4) an attenuated time period as concerning this dispute, especially when considering the specific requests; (5) the subpoena lacks particularity when it seeks *all* documents *at all* "referring or relating to" these several categories that, in effect, cover all of AMc's work on NRATV and Payne's entire employment with AMc; and (6) the overbreadth alone demonstrates undue burden, which all factors together further emphasize.[32]

---

[32] 392 F.3d at 818.

**MOVANTS' MOTION TO QUASH PLAINTIFF'S THIRD-PARTY SUBPOENA**          **PAGE 14**

**D.      Exceptional circumstances warrant transferring this Motion to the Northern District of Texas.**

33.     According to Federal Rule of Civil Procedure 45(f), the compliance court can transfer the Motion to the issuing court based on exceptional circumstances.  Here, exceptional circumstances exist based on the facts described herein, including the various pending motions to quash and motions to compel before the Northern District of Texas.  As mentioned above, another exceptional circumstance is the dispute over the protective order and the risk that a third party's compliance with said subpoenas would circumvent the protective order.  These discovery issues are likely to arise (and have arisen) in several districts and will be addressed by the Northern District of Texas, such that judicial economy supports transferring the Motion to promote uniformity.

## IV.    CONCLUSION

For the foregoing reasons, Movants respectfully request this Court grant its Motion; quash the subpoena to Tammy Payne; and grant Movants any further relief, at law or in equity, to which they may be justly entitled.

Dated: September 23, 2020.

        Respectfully submitted,

        */s/ R. Thompson Cooper*
        **R. Thompson Cooper**
        OBA No. 15746
        ROBERSON, KOLKER, COOPER & GOERES, P.C.
        16408 Muirfield Place
        Edmond, OK  73013
        405.606.3333 voice
        405.606.3334 fax
        tom@rkcglaw.com

        **ATTORNEYS FOR MOVANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF SERVICE

      I hereby certify that on September 23, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Oklahoma. I hereby certify that I have served the document on counsel for the NRA the issuing court in the Northern District of Texas, Dallas Division.

        */s/ R. Thompson Cooper*
        R. THOMPSON COOPER